UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AARONN JERMAINE OWENS,
#851904,

    Petitioner,                                          Civil Action No. 17-CV-10323

vs.                                                    HON. BERNARD A. FRIEDMAN

JEFFREY WOODS,

    Respondent.
_____/

**OPINION AND ORDER DENYING PETITIONER'S APPLICATION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO PROCEED ON APPEAL IN FORMA PAUPERIS**

This matter is presently before the Court on petitioner's pro se application for a writ of habeas corpus. Petitioner challenges his convictions for torture, Mich. Comp. Laws § 750.85, assault with intent to do great bodily harm less than murder, Mich. Comp. Laws § 750.84, assault with intent to maim, Mich. Comp. Laws § 750.86, unlawful imprisonment, Mich. Comp. Laws § 750.349b, and possession of a firearm during the commission of a felony (felony-firearm), Mich. Comp. Laws § 750.227b. Petitioner raises a single claim for relief: he received ineffective assistance of counsel during plea negotiations. Respondent has filed an answer arguing that the claim is meritless. For the reasons explained below, the Court shall deny the petition. The Court shall also deny a certificate of appealability and leave to proceed on appeal in forma pauperis.

**I. Background**

The Michigan Court of Appeals summarized the facts underlying petitioner's convictions as follows:

> On February 1, 2012, the victim, Daivon Williams, went to defendant's house to purchase marijuana. While there, defendant asked Williams

questions about a stolen truck. When Williams claimed to not know anything about it, an unidentified male who was at defendant's house with defendant placed a gun in his lap. Williams was ordered to strip naked. Both defendant and the unidentified male aggressively asked Williams questions about the truck, and Williams continued to deny knowing anything. At some point, defendant got a metal spatula, heated it, and used it to burn Williams's arm. When Williams tried to defend himself, the unidentified male struck him repeatedly in the back of the head with the gun. Williams testified that while he was being hit, defendant threw boiling water on his chest. The questions about the truck continued. Williams attempted to call the individual who apparently stole the truck, but there was no answer. Defendant then went back to the kitchen and returned with the heated spatula, which he used to burn both of Williams's legs. All the while, the unidentified male with the gun stood over Williams.

Defendant then retrieved a metal hammer and struck the top of Williams's left foot four times. Williams felt the bones in his foot break. Defendant continued to ask about the truck and then, apparently unsatisfied with Williams's answers, struck Williams's right foot with the hammer three times.

Williams was then ordered to go into the basement, where he was made to sit on the floor, still naked, with his knees up. Defendant hit him again with the hammer. Then defendant went upstairs and returned with a can of kerosene and a lighter. He poured the kerosene over Williams, who said that it ran down his face, back, chest, and legs. The next thing he knew he felt heat all over his body and saw flames on his face and arm. He jumped up and ran into a wall. Defendant doused the flames with a pot of water and told Williams they were going for a ride.

Defendant and his accomplice drove Williams from the west side of Detroit to the east side. They stopped the vehicle in front of an alley and ordered Williams to get out and walk away. Williams made it about five steps before he heard a gunshot. The bullet hit him in his right hip. Williams walked to the nearest house and asked for help.

Detroit City Police Officer Dean Muczynski, the first officer on the scene, testified that when he arrived he saw Williams standing naked on the porch. He explained that as he approached Williams:

> I started to see skin hanging off of him so I called for medics before I even talked to him. I saw blood around his waist and his feet were deformed, kind of like in angles. So before I did anything, I called for EMS. I didn't want to touch him . . . The lady of the house was kind enough to give us a

> blanket just to wrap him around, didn't want to squeeze him too tight, he was just screaming.
>
> Williams identified his attacker as "Aaronn" before he was taken by ambulance to the hospital. He stayed at the hospital for 21 days, during which he was able to identify defendant as his attacker from a photo lineup.

*People v. Owens*, No. 315046, 2014 WL 2600738, at *1-2 (Mich. Ct. App. June 10, 2014), *rev'd in part, appeal denied in part*, 870 N.W.2d 713 (Mich. 2015).

Petitioner was convicted by a Wayne County Circuit Court jury on the charges listed above. He was sentenced as follows: 285 months to 46 years' imprisonment for the torture conviction, 5 to 10 years' imprisonment for the assault with intent to do great bodily harm less than murder conviction, 5 to 10 years' imprisonment for the assault with intent to maim conviction, and 10 to 15 years' imprisonment for the unlawful imprisonment conviction. These sentences are to be served concurrently with one another and consecutively to two years' imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, claiming that the verdict was against the great weight of the evidence, the prosecutor committed misconduct, trial counsel was ineffective in failing to object to the prosecutorial misconduct and in incorrectly advising petitioner during plea negotiations, and the sentence violated *Alleyne v. United States*, 570 U.S. 99 (2013). The Michigan Court of Appeals affirmed petitioner's convictions and sentences. *Owens*, 2014 WL 2600738, at *1. Petitioner filed an application for leave to appeal in the Michigan Supreme Court. In lieu of granting leave to appeal, the Michigan Supreme Court remanded to the trial court for a determination as to whether the court would have imposed a materially different sentence under the sentencing procedure described in *People v. Lockridge*, 870

3

N.W.2d 502 (Mich. 2015).[1]  *See People v. Owens*, 870 N.W.2d 713 (Mich. 2015).  In all other respects, the Michigan Supreme Court denied leave to appeal "because we are not persuaded that the remaining questions presented should be reviewed by this Court."  *Id.*  On remand, the trial court found resentencing was not necessary under *Lockridge*.

Petitioner filed the instant petition and later moved for a stay to allow him to exhaust additional claims in state court.  The Court granted a stay [docket entry 6].  Petitioner filed a motion for relief from judgment in the trial court raising five claims for relief.  The trial court denied the motion.  Petitioner did not seek leave to appeal the trial court's decision in the Michigan Court of Appeals.  Instead, he filed a motion in this Court to lift the stay, but he did not seek leave to amend his petition to include any of the claims raised in his motion for relief from judgment [docket entry 9].  After the stay was lifted and the case was reopened [docket entry 10], respondent filed an answer and the relevant state court record.  Petitioner has not filed a reply.

---

[1] In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court

> held that the Michigan guidelines scheme violated defendants' Sixth Amendment rights under *Alleyne* [*v. United States*, 570 U.S. 99 (2013)], because it was all but mandatory and incorporated judge-found facts to increase minimum sentences.  *See* 870 N.W.2d at 513-14. . . . *Lockridge* . . . made the Michigan guidelines for minimum sentences akin to the federal guidelines—advisory, but "a highly relevant consideration in a trial court's exercise of sentencing discretion." 870 N.W.2d at 520.  Thus, *Lockridge* did not change how the guidelines ranges for minimum sentences were *computed*; the only change was that they were no longer binding on the sentencing judge.  To provide guidance to Michigan appellate courts, the Michigan Supreme Court instructed that "in cases in which a defendant's minimum sentence was established by application of the sentencing guidelines in a manner that violated the Sixth Amendment, the case should be remanded to the trial court to determine whether that court would have imposed a materially different sentence but for the constitutional error." *Id.* at 523.

*Reign v. Gidley*, 929 F.3d 777, 779 (6th Cir. 2019) (emphasis in original).

4

**II. Legal Standard**

> To obtain relief under 28 U.S.C. § 2254, habeas petitioners who challenge a matter "adjudicated on the merits in State court" [must] show that the relevant state-court "decision" (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (alteration added) (quoting 28 U.S.C. § 2254(d)). "The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)). Section 2254 "thus imposes a highly deferential standard for evaluating state-court rulings . . . and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review under § 2254(d)(1) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**III. Discussion**

Petitioner seeks habeas relief on the grounds that he received ineffective assistance of counsel. He argues that defense counsel was ineffective during plea negotiations because counsel incorrectly informed him about his potential sentence exposure. Petitioner maintains that

5

he was informed that the sentencing guidelines range was eleven to eighteen years when the guidelines range determined at sentencing was fourteen to twenty-three years.

At a final pretrial conference on July 6, 2012, petitioner rejected a plea offer described on the record as follows:

> MS. WALSH [prosecutor]: The People had extended an offer. The guidelines are 11 to 18. He is charged with assault with intent to murder, torture, assault with intent to maim, unlawful imprisonment and felony firearm. For a plea of guilt to Count One, AWIM, Count Two, torture, Count Three, FF, the People would do an agreement to 10 to 18 plus two.
>
> THE COURT: Mr. Winters?
>
> MR. WINTERS [defense counsel]: I've conveyed that offer to Mr. Owens, your Honor, and it's rejected.
>
> THE COURT: Okay. Very well. He has rejected the offer?
>
> MR. WINTERS: That's correct.
>
> Mr. Owens, did I tell you what that generous offer was from the Wayne County prosecutor's office?
>
> DEFENDANT OWENS: Yes, he did, Ms. Parker.
>
> THE COURT: We will be going forward with a jury trial.
>
> DEFENDANT OWENS: Correct.

Final Conference Tr. at 3-4 (docket entry12-5, PageID.158-59).

Section 2254 "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 16 (2013). The standard for obtaining relief is "difficult to meet." *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013). In the context of an ineffective assistance of counsel claim under *Strickland v. Washington*, 466 U.S. 668 (1984), the standard is "all the more difficult" because "[t]he standards created by

6

*Strickland* and § 2254(d) are both highly deferential . . . and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted).

An ineffective assistance of counsel claim has two components. The first is that counsel's performance was deficient, and the second is that the deficiency prejudiced the defense. *See Strickland*, 466 U.S. at 687. To establish deficient representation, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. "When § 2254(d) applies, the question is not whether counsel's actions were reasonable" but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

In order to establish the prejudice component, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. In *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court held that the *Strickland* standard applies to a claim that counsel was ineffective during plea negotiations. The Court explained how a petitioner satisfies *Strickland*'s prejudice prong where counsel's ineffective advice caused a petitioner to reject a plea offer:

> [A] defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 164.

In the present case, the Michigan Court of Appeals denied the same ineffective assistance of counsel claim regarding plea negotiations that petitioner asserts at this time: that

7

counsel misinformed him about his sentence exposure by telling him "that the sentencing guidelines range was 11 to 18 years when, in fact, the guidelines range was 14 to 23 years." *Owens*, 2014 WL 2600738, at *6. Finding the record "scant on the matter of plea negotiations" because petitioner did not seek an evidentiary hearing on his ineffective assistance of counsel claim, the court found no evidence in the record that petitioner would have accepted the plea offer, even if he had received inaccurate information. *Id.* at *7. The court noted that petitioner's "rejection of the offer appears to have been based on his claim of innocence." *Id.* The court therefore concluded that petitioner had "failed in his burden of showing that he would have accepted the offer if he had been aware of the proper sentencing guidelines." *Id.*

Petitioner does not show that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, Supreme Court precedent. First, the record does not establish that defense counsel incorrectly calculated the guidelines. It was the prosecutor, not defense counsel, who set forth the guidelines during the final pretrial conference. It is clear from the record that the scoring of the prior record variables and offense variables was debated extensively at sentencing. The original sentencing hearing was adjourned to resolve a disagreement over whether petitioner was on probation at the time he committed the offenses because he contended he was not. Sentencing Hr'g 9/19/2012 at 5-8 (docket entry 12-9, PageID.558-61). When the trial court reconvened for sentencing, the prosecutor established that petitioner was on probation at the time of the offenses, which increased his prior record variables scoring. Sentencing Hr'g 10/10/2012 at 21-23 (docket entry 12-10, PageID.585-87). The guidelines also increased at least in part as a result of the testimony that was elicited during trial regarding the cruelty of the crimes. At sentencing, the trial court judge described the case as "horrific," stated that she had "never seen anything like this," and commented on the "level of brutality" and "level of pain" in this case. *Id.*

8

at 35-37 (PageID.599-601). The trial testimony, which clearly impacted sentencing, would not have been in the record if petitioner had entered a plea.

Second, the Michigan Court of Appeals' conclusion that petitioner failed to show that he would have accepted the plea offer even if he had known about the higher guidelines range was not unreasonable. Defense counsel described the plea offer as "generous," and petitioner nevertheless rejected it. *Owens*, 2014 WL 2600738, at *7. While petitioner would have reaped substantial benefit from entering a plea, the Court may not rely on "the harsh light of hindsight" to evaluate counsel's performance. *Harrington*, 562 U.S. 107 (quotation omitted). Petitioner has not shown that the state court had "no reasonable basis" for concluding that he failed to establish prejudice. *Id.* at 98.

Third, petitioner has not shown a likelihood that the trial court would have accepted the plea agreement and sentenced him to a ten-year minimum sentence. The minimum sentence guidelines range calculated at sentencing for the torture conviction was fourteen years and three months to twenty-three years and nine months. Sentencing Hr'g 10/10/2012 at 36-37 (docket entry 12-10, PageID.600-01). The court sentenced petitioner at the high end of the guidelines, imposing a minimum sentence of twenty-three years and nine months. *Id.* at 37-38 (PageID.601-02). The fact that the minimum sentence ultimately imposed for the torture conviction is at the high end of the minimum sentence range "strongly suggests the trial court would not have been willing to sentence" petitioner to a ten-year minimum sentence. *See McGowan v. Burt*, 788 F.3d 510, 518 (6th Cir. 2015). Accordingly, petitioner has failed to show that the Michigan Court of Appeals' decision was contrary to, or an unreasonable application of, Supreme Court precedent.

9

## IV. Certificate of Appealability

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings requires that a court "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

In the present case, the Court concludes that reasonable jurists would not debate the conclusion that the instant petition does not state a claim upon which habeas relief may be granted. Therefore, the Court shall not issue a certificate of appealability.

## V. Conclusion

For the reasons stated above,


IT IS ORDERED that the petition in this matter for a writ of habeas corpus is denied.


IT IS FURTHER ORDERED that a certificate of appealability is denied because petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

IT IS FURTHER ORDERED that petitioner may not proceed on appeal in forma pauperis, as any appeal in this matter would be frivolous.

Dated: June 18, 2020
Detroit, Michigan

s/Bernard A. Friedman
Bernard A. Friedman
Senior United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first-class U.S. mail on June 18, 2020.

**Aaronn Jermaine Owens,** 851904
Chippewa Correctional Facility
4269 W. M-80
Kincheloe, MI 49784

s/Johnetta M. Curry-Williams
Case Manager